# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| STATE OF TEXAS,<br>    *Plaintiff*,<br><br>v.<br><br>XAVIER BECERRA, Secretary of the United States Department of Health and Human Services, in his official capacity; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; JEFF HILD, Principal Deputy Assistant Secretary for the Administration for Children and Families; ADMINISTRATION FOR CHILDREN AND FAMILIES; REBECCA JONES GASTON, Commissioner of the Administration on Children, Youth and Families, and Acting Associate Commissioner of the Children's Bureau, in her official capacity; ADMINISTRATION ON CHILDREN, YOUTH AND FAMILIES; CHILDREN'S BUREAU; and the UNITED STATES OF AMERICA,<br>    *Defendants*. | No. 6:24-cv-00348-JDK |

# EXHIBIT A

Case 6:24-cv-00348-JDK     Document 19-1     Filed 12/06/24     Page 2 of 5 PageID #:  120

## DECLARATION OF ERICA BANUELOS

I, Erica Banuelos, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am over the age of 18, and I have personal knowledge of the facts contained in this Declaration. I could competently testify as to the contents of this declaration if called upon to do so.

2. I am the Child Protective Services (CPS) Associate Commissioner with the Department of Family and Protective Services (DFPS), and I am responsible for the overall planning, implementation and oversight of CPS programs and policies to promote effective program administration and service delivery. I direct and am accountable for major program management decisions impacting significant numbers of families, children, staff, and resources. I establish program expectations and strategic priorities and critically assess program performance by reviewing the results of case reviews and data analysis to evaluate staff productivity and the quality of decision making. I ensure that CPS program staff have a direct line of communication to state office; hear field concerns and addresses deficiencies; and oversee contracts charged with case management services throughout Texas. I implement continuous process improvement to ensure better child safety outcomes and increased case worker time with families. I advise and am accountable to the DFPS Deputy Commissioner for Programs on the status and progress of major system reforms.

3. I am aware of the newly adopted federal rule entitled "Designated Placement Requirements Under Titles IV-E and IV-B for LGBTQI+ Children," 89 Fed. Reg. 84,818, issued on April 30, 2024 ("Final Rule"). The Final Rule was effective July 1, 2024.

4. DFPS is the state governmental entity designated in Texas to administer the Title IV-E foster care and adoption assistance program as well as provide protective services to children and families through the Title IV-B program. In fiscal year 2024, DFPS received $368,772,531.00 in federal funds for the Title IV-E program and $63,389,793.00 in federal funds for the Title IV-B program.

5. As the designated state agency for both Title IV-E and Title IV-B programs, DFPS must implement this Final Rule on or before October 1, 2026. Due to the difficulties described in this Declaration to find and create a network of qualified providers, and perform related tasks, DFPS must start implementing the Final Rule as early as October 2024.

6. The Final Rule tasks DFPS with implementing significant new training, monitoring and other requirements in addition to requiring DFPS to recruit new providers. DFPS cannot fulfill these requirements without increased funding from the State. Texas' Legislature convenes biannually and enacts a two-year budget, which provides DFPS

with almost all of the State funds it receives. The Texas Legislature is set to convene its next regular session the 2nd Tuesday in January 2025, during which it will enact a budget that will govern funding appropriations for September 1, 2025 through August 31, 2027—after the Final Rule's implementation deadline. During the regular session State agencies like DFPS submit proposed budgets to the Legislature, which will in turn review and incorporate them into the statewide budget it enacts. Accordingly, DFPS must plan for compliance with the Final Rule in the immediate future in order to be able to submit a proposed budget in time. Otherwise, DFPS will be unable to secure the funding it will need to finance the many steps compliance with the Final Rule entails.

7. DFPS has already begun the internal review that this planning requires. This review by itself costs the agency significant work hours.

8. If DFPS is required to fully implement the Final Rule, the new training, monitoring and recruitment efforts will significantly increase the costs that DFPS must bear. Some of these costs will be paid with State funds.

9. The Final Rule, at a minimum, requires that Title IV-E and IV-B agencies ensure a Designated Placement is available for all children who identify as LGBTQI+ and specifies the Designated Placement requirements. A Designated Placement provider must: (1) establish an environment that supports the child's LGBTQI+ status or identity, (2) be trained with appropriate knowledge and skill to provide for the gender identity/expression needs of the child, and (3) ensure access to age and developmentally appropriate services that meet the needs related to their gender identity as well as clinically appropriate mental and behavioral health care supportive of their gender identity.

10. Under the Final Rule, DFPS is required to build the capacity for Designated Placement providers statewide, implement written rules and policies, technological changes, and training for all caseworkers and contractors which will result in a significant cost to the agency in the millions. All these elements must occur, or the agency will be subject to the loss of federal funding and/or to claims of harassment and retaliation.

11. The Final Rule applies to relative placements as well. These additional requirements will make it more difficult to place children with relatives and fictive kin even though these placements are statutorily preferred. *See*, Tex. Fam. Code § 262.114(d). The requirements under the Final Rule will create an undue burden on relative and fictive kin because these onerous Designated Placement requirements may pose an obstacle to their willingness to accept a LGBTQI+ child. Family members accept these unplanned placements based on their relationship with the youth and not as career foster parents. Any extra requirements imposed on them will make it extremely difficult for the relative to accommodate the child in their home and continue with their daily lives.

12. There are approximately 17,000 children in foster care in Texas. From this number,

approximately 1029 children are placed in congregate care. Although the agency is making efforts to place more children in family settings, some children need the treatment services that are available in congregate settings. These settings, for safety reasons, are segregated by biological sex and not gender identity. To comply with the Final Rule, DFPS will either need to provide youth that normally share bedrooms with individual rooms or suspend the State's policy of sex-segregated accommodations. Doing the former would shrink the existing treatment services available only in congregate care capacity and would make it costly to build new capacity. Doing the latter could lead to safety and behavioral problems throughout congregate care facilities.

13. Current providers are able to determine if their placements are suitable for youth based on the individual assessment of that youth in conjunction with the needs of the other youth in that placement. Under the Final Rule, providers will no longer be able to perform that kind of needs analysis because the Final Rule imposes a unique requirement on providers to provide affirming treatment to LGBTQI+ children. They will be forced to prioritize the concerns of LGBTQI+ children over the needs of others possibly causing treatment and safety concerns.

14. The majority of the State of Texas is rural. DFPS struggles to build placement capacity in rural areas already due to the following issues: population, cost of living, lack of qualified staff to hire, and limited access to services. Rural areas have limited capacity to address the complex medical and behavioral health needs of foster children. Although efforts are being made to build this treatment capacity, the Final Rule will force DFPS to concentrate its efforts and resources to build the Designated Provider capacity for LGBTQI+ youth which may not be successful due to the existing issues facing rural Texas.

15. The Final Rule requires DFPS to facilitate new placements for LGBTQI+ foster children who request to be newly placed with a designated provider, even if the child's current provider had provided a robust level of care. This could expose youth to suffer the trauma of placement disruption and expose current providers and DFPS to claims of harassment or retaliation as well as loss of federal funding. This portion of the Final Rule would apply to relative, fictive kin, and pre-adoptive placements as well.

16. Under the Final Rule, DFPS will have engaged in retaliation if the agency conducts or sustains an abuse and neglect investigation using information about a youth's LGBTQI+ identity, even though State law authorizes such investigations relating to the use of certain medical procedures.

17. Specifically, DFPS, relying on Attorney General Opinion No. KP-0401, considers that certain gender reassignment surgeries and hormone therapy regimens may constitute child abuse when provided to children by a caregiver. DFPS regards safeguarding children from abuse an important aspect of its child welfare mission. But DFPS would violate the Final Rule's retaliation provisions by conducting any investigations regarding

  these harmful procedures.

18. Terms of the Final Rule conflict with Texas law. Texas law prohibits healthcare providers from performing a sterilizing surgery or mastectomy or provide puberty blockers or cross-sex hormones to minors "[f]or the purpose of . . . affirming the child's perception of the child's sex if that perception is inconsistent with the child's biological sex." Tex. Health & Safety Code § 161.702.

19. Although all foster youth are Medicaid beneficiaries, Texas also excludes "sex change operations" from its Medicaid program. Tex. Health & Human Servs., Tex. Medicaid Provider Procedures Manual § 1.11 (May 2024).

I declare under penalty of perjury under the laws of the State of Texas and pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on December 6, 2024, in Austin, Texas.

*Erica Banuelos*
Erica Banuelos